IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA N. DEGAN,

       **Plaintiff,**

v.

RESER'S FINE FOODS, INC.,

       **Defendant.**

Case No. 14-4004-DDC

**MEMORANDUM AND ORDER**

Plaintiff Amanda N. Degan brings this employment termination case against defendant Reser's Fine Foods, Inc., alleging disparate treatment, discriminatory discharge, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44-1001 *et seq*. This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. 30). For the reasons explained below, the Court grants defendant's motion.

### I.    Uncontroverted Facts

The following facts are uncontroverted or, if controverted, are stated in the light most favorable to plaintiff as the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

#### A.   Plaintiff's Employment

Plaintiff is a United States citizen of Mexican descent. She speaks both English and Spanish fluently. Plaintiff worked for defendant as a Human Resources Assistant from December 27, 2011, until defendant terminated her employment on August 31, 2012. Because she is bilingual, defendant paid plaintiff one extra dollar per hour to assist Spanish-speaking employees with human resources matters. The job description for plaintiff's position did not

1

require applicants to be able to speak Spanish. Instead, it specified that a person who was "English/Spanish bilingual [was] a plus." Doc. 31-6. Plaintiff signed a copy of this job description on her first day, acknowledging that defendant had discussed the requirements of the job with her.

Luis Fernandez was plaintiff's supervisor. Mr. Fernandez is Hispanic and, like plaintiff, he speaks both English and Spanish fluently. As the Human Resources Manager, Mr. Fernandez had the power to hire and fire employees under his supervision, including plaintiff. Mr. Fernandez also supervised Janis King, a Human Resources Recruiter. Plaintiff shared her office with Ms. King. Ms. King does not speak Spanish and did not have the authority to hire or fire plaintiff.

Defendant's employee handbook set out the rules, policies, and procedures governing plaintiff's employment. The handbook contained defendant's attendance and call-in policy, which provided, in part:

> If you do not report as scheduled or if you leave work prior to the end of your scheduled shift, without your Supervisor's approval to do so, you may be subject to disciplinary action. Failure to report and call-in as required may be considered a voluntary resignation or a no call/no show termination.

Doc. 31-12 at 2. In addition, the attendance and call-in policy stated that "[e]xcessive tardiness and/or absenteeism may result in disciplinary action up to and including termination." Doc. 31-12 at 2. Plaintiff received a copy of the handbook, read it, and acknowledged that she understood it on her first day of work.

### B. Plaintiff's Absences, Written Warnings, and Termination

While employed by defendant, plaintiff's scheduled workdays were Monday through Friday from 8:00 a.m. until 5:00 p.m. But between January 30, 2012 and April 10, 2012, plaintiff arrived at work late 11 times, left work early four times, and arrived late and left early

2

on the same day twice.  Plaintiff also failed to work her scheduled shifts on February 20, April 12, April 13, April 16, April 17, April 18, and April 19.  Because of these absences, Mr. Fernandez presented plaintiff with her first written disciplinary warning on April 19.  The warning listed the 24 days that plaintiff had arrived late, left early, or failed to work, and stated that those absences were excessive.  It also reminded plaintiff that excessive absenteeism could lead to further disciplinary action or termination under defendant's attendance and call-in policy.  Plaintiff signed the warning without inserting any statement in its "Employee Remarks" section.[1]  Later, at her deposition, plaintiff testified that Mr. Fernandez excused her absences from April 12 through April 19 because she was ill.  She did not retain a copy of the email from Mr. Fernandez or her doctor's note approving these absences.

After receiving her first written warning, plaintiff failed to work her scheduled shifts on August 13, August 15, August 16, August 17, and August 20.  She left work early on August 14.  And on August 29, plaintiff left at 10:59 a.m., six hours before her shift ended, without approval.  After she left, plaintiff contacted Mr. Fernandez who told her to return that afternoon.  But she did not return.  Nor did she return on August 30 or August 31, according to defendant's timekeeping records.  Plaintiff disputes these records.  While she does not contend that she was present on August 30, plaintiff claims that she would have requested Mr. Fernandez's approval if she was absent.  She also asserts that she "showed up for" work on August 31.[2]  Doc. 34 at 5.

---

[1] The Disciplinary Action Form, signed by plaintiff, provides: "The absence of any statement on the part of the employee [in the 'Employee Remarks' Section] indicates agreement with the report as stated."  Doc. 31-8.

[2] Plaintiff's statements, even when viewed in her favor, are inconsistent and unclear on this point.  First, in response to defendant's Statement of Uncontroverted Facts, plaintiff argues that she was present on August 31.  Doc. 34 at 3.  But when describing her termination on August 31, plaintiff seems to state that she called in for approval to be absent that day.  When confronted by Mr. Fernandez for not arriving at work on time that day, plaintiff "told him that she called-in and spoke to Angie Simmons, now Price."  Doc. 34 at 5.

On August 30, defendant issued a second written warning to plaintiff.  Mr. Fernandez and a department manager signed the warning on September 4, 2012, noting that plaintiff was not there.  Defendant described the incidents leading to the second warning as follows:

> Amanda failed to work her scheduled shift on August 12, went home early on August 14, and was absent again on August 15, 16, 17, and 20.  Amanda left work early on August 29 without authorization and failed to return to work as instructed after speaking with the HR Manager.  These absences are excessive.  In addition[,] Amanda did not show up to work nor called in 8/30/12.

Doc. 31-9.  Defendant issued a final written warning on August 31.  Again, Mr. Fernandez and a department manager signed the warning on September 4, 2012.

Mr. Fernandez terminated plaintiff's employment on August 31.  Mr. Fernandez has submitted an affidavit on behalf of defendant.  In it, he declares that he terminated plaintiff "because of her frequent tardiness, absences, and her failure to appear for work or call in for two consecutive shifts."  Doc. 31-4 at 2.

### C.  Plaintiff's Complaints About a Co-Worker

Plaintiff complained to Mr. Fernandez about Janis King on several occasions.  She submitted complaints orally and they centered on Ms. King's objection to plaintiff speaking Spanish in their shared office.  Over the course of her employment, plaintiff complained to Mr. Fernandez that Ms. King:  (1) asked her not to speak Spanish to Mr. Fernandez or any other employee while in the office; (2) requested that she give Spanish-speaking employees five to 15 minutes to complete employment forms before offering to assist them; (3) talked down to her and asked demeaning questions about her Mexican ancestry; and (4) treated her poorly because of her Mexican ancestry.  In response to these complaints, plaintiff testified that Mr. Fernandez just laughed and told plaintiff that Ms. King was stressed.  Plaintiff also testified that Ms. King threatened her employment by telling her that defendant's corporate office "would do

4

something" if it discovered that she spoke Spanish at work. Doc. 34-2 at 20-21. It is not clear from plaintiff's testimony whether she told Mr. Fernandez about this threat.

On August 29, two days before her termination, plaintiff orally made two complaints about Ms. King to Mr. Fernandez. Plaintiff complained that Ms. King used profane language and directed her to assist an employee who spoke English before a Spanish-speaking employee who had entered the Human Resources office first. Plaintiff also told Mr. Fernandez that Ms. King had referred to him "as an F-in' idiot" after speaking with him on the phone. Doc. 34 at 7-8. Mr. Fernandez spoke with Ms. King about plaintiff's complaints and reported that he had resolved her complaints to his satisfaction.

### D. Defendant Terminated the Employment of Other Employees Who Violated the Attendance and Call-In Policy

Between December 1, 2011 and December 30, 2012, defendant terminated over 500 employees for excessive absences, tardiness, or failing to report to work or call in advance of absences. Of those employees, defendant identified 264 as "White" and 108 as "Hispanic or Latino." *See* Doc. 31-14. On June 26, 2013, defendant also terminated the employment of Shannon Baker, a white Human Resources employee. Defendant discharged Ms. Baker for violating several company policies, including the company's attendance and call-in policy.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute [about] any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)). A disputed "issue of fact is 'genuine' 'if the evidence is such that a

reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). In order to survive summary judgment, the non-moving party's "evidence, including testimony, must be based on

more than mere speculation, conjecture, or surmise." *Id*. (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.   Analysis

Defendant moves for summary judgment against each one of plaintiff's claims. Plaintiff's claims rely on Title VII, 42 U.S.C. § 1981, and the KAAD. Where, as here, a plaintiff has not alleged any direct evidence of discrimination, it may use circumstantial evidence to prove discrimination within the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). All three of plaintiff's causes of action use the *McDonnel Douglas* approach. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (applying *McDonnell Douglas* framework to Title VII and 42 U.S.C. § 1981 discrimination claims); *Reber v. Mel Falley, Inc.*, 683 P.2d 1229, 1230-32 (Kan. 1984) (adopting *McDonnell Douglas* framework for discrimination cases brought under the KAAD).

The *McDonnell Douglas* framework requires a three-step analysis. First, the plaintiff must establish a prima facie case of discrimination. *Randle*, 69 F.3d at 451 (citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff meets the burden of proof for a prima facie case, then the burden shifts to the defendant to provide a non-discriminatory reason for its adverse employment decision. *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802-03). "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact [about] whether the employer's proffered reason for the challenged action is

7

pretextual—*i.e.* unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir. 1994)).

Defendant asserts that all three of plaintiff's claims fail to survive under the *McDonnell Douglas* test for two independent reasons. First, defendant argues that plaintiff cannot establish a prima facie case to support any of her claims, and, therefore, they fail as a threshold matter. Second, defendant contends, even if plaintiff could establish a prima facie case, defendant has articulated a legitimate, non-discriminatory reason for her termination and plaintiff cannot meet her burden to establish that defendant's explanation is pretextual. The Court addresses each of these arguments, in turn, below.

**A. Prima Facie Case of Discrimination**

The *McDonnell Douglas* burden-shifting approach imposes the initial burden of proof on plaintiff. In order to satisfy this burden, plaintiff must present a prima facie case of discrimination. The elements required to present a prima facie case are flexible and "may differ according to differing fact situations." *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir. 1983) (citing *McDonnell Douglas*, 411 U.S. at 802 n.13). Plaintiff's burden at the prima facie stage is "not [an] onerous" one. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253. She is required to raise only an inference of discrimination, *Mohammed*, 698 F.2d at 398, and need "'not dispel the non-discriminatory reasons subsequently proffered by the defendant.'" *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000)). Here, defendant contends that summary judgment is warranted because plaintiff cannot establish a prima facie case of disparate treatment, discriminatory discharge, or retaliation.

### 1. Disparate Treatment

Plaintiff contends that defendant treated her differently than its other employees because of her Mexican ancestry and her ability to speak Spanish. For plaintiff to establish a prima facie case of disparate treatment, she must demonstrate that: (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) defendant treated her differently than it treated similarly situated, non-minority employees who violated rules of comparable seriousness. *Orr*, 417 F.3d at 1149 (citing *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998)); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Defendant does not dispute that plaintiff can establish the first and second prongs of this prima facie test— *i.e.*, she is a member of a protected class and terminating her employment was an adverse action. But defendant argues that plaintiff cannot satisfy the third prong because she cannot demonstrate that defendant treated similarly situated employees differently than it treated her.

Trying to support this aspect of her claim, plaintiff points to Janis King, a Caucasian Human Resources Recruiter. Plaintiff, who shared an office with Ms. King, contends that they were similarly situated employees and "a comparison of her treatment to [the treatment of] Ms. King demonstrates the prima facie case." Doc. 34 at 10. Specifically, she argues:

> It is upon Plaintiff's protected class characteristic, that is speaking Spanish, that the differences in . . . treatment are sufficient to assert a prima facie case of discrimination. Ms. King complained about plaintiff doing her job[,] that is speaking in Spanish to employees in the workplace. She would have had plaintiff not speak Spanish at all[,] even though defendant's employees relied upon her for assistance in Human Resources.

Doc. 24 at 10. Plaintiff therefore appears to argue that defendant treated her differently than Ms. King, allegedly a similarly situated co-worker, because Ms. King requested that she not speak Spanish.

9

In the context of a disparate treatment analysis, "'[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance and discipline.'" *McGowan v. City of Eufala*, 472 F.3d 736, 746 (10th Cir. 2006) (quoting *Aramburu*, 112 F.3d at 1404). To determine whether employees are similarly situated, courts "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.* (quoting *Aramburu*, 112 F.3d at 1404). Here, that requires a comparison of plaintiff and Ms. King. Both worked in defendant's Human Resources office. Both reported to Mr. Fernandez. Both were subject to the same rules, policies, and procedures set out in the employee handbook. And while plaintiff argues that her "job responsibilities were completely different from Ms. King['s]" (Doc. 34 at 8), this factor alone does not preclude the two from being similarly situated. *See McGowan*, 472 F.3d at 746.

Still, plaintiff cannot properly compare her treatment with the way their common employer—the defendant—treated Ms. King. The analysis mandated by a prima facie case of disparate treatment requires plaintiff to show that defendant treated her "differently than other similarly situated employees who violated work rules of comparable seriousness." *Aramburu*, 112 F.3d at 1404. Completely missing from the summary judgment record is any admissible evidence that Ms. King ever violated the company's attendance or call-in policy or any other comparable work rule. Nor does plaintiff adduce any evidence that defendant ever reprimanded Ms. King for speaking a foreign language at work. Thus, no evidence in the record exists that could permit a rational trier of fact to compare defendant's treatment of plaintiff with its treatment of Ms. King. Because plaintiff has adduced no evidence in the summary judgment

10

record that defendant treated Ms. King or any other similarly situated employee differently than it treated her, the Court grants summary judgment against plaintiff's disparate treatment claim.

### 2. Discriminatory Discharge

To make a prima facie case of discriminatory discharge under Title VII, 42 U.S.C. § 1981, and the KAAD, plaintiff must show: "(1) [she] was a member of a protected class; (2) [she] was qualified and satisfactorily performing her job; and (3) [she] was terminated under circumstances giving rise to an inference of discrimination." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Plaintiff can establish a basis for an inference of discrimination in various ways, including "actions or remarks made by decision makers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees outside the protected class . . . or, more generally, upon the timing or sequence of events leading to plaintiff's termination." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (citations omitted).

While her argument on this point is not entirely clear, plaintiff seems to contend that her termination was discriminatory for two reasons. First, she argues that defendant did not issue its final two disciplinary warnings to plaintiff for excessive absenteeism until after defendant fired her. She asserts that defendant's decision to issue these warnings only after she complained about Ms. King on August 29 and her discharge on August 31 gives rise to an inference of discrimination. Next, she contends that "Ms. King's statements and inference that employees should learn to speak English" is evidence of defendant's discriminatory animus toward her. Doc. 34 at 10-11. Defendant counters by arguing that it terminated plaintiff's employment because of her excessive absenteeism. Thus, defendant contends, plaintiff cannot show that she

was qualified and satisfactorily performing her job or that her termination gave rise to an inference of discrimination.

On her first day, plaintiff received and reviewed defendant's attendance and call-in policy. The policy stated that a failure to report to work or call-in prior to an absence could be treated as a voluntary resignation or a "no call/no show termination." Doc. 31-12 at 2. It also specified that excessive tardiness or absenteeism was cause for termination. On April 19, plaintiff received her first written disciplinary warning. She signed the warning without comment, thereby agreeing that she had arrived late, left early, or failed to work her scheduled shift 24 times over a three-month period. Four months later, on August 30, defendant issued a second written warning to plaintiff. It stated that plaintiff had left work early or failed to work her scheduled shift eight times in August. The warning went on to state that she had left work without authorization on August 29, and did not return that day despite Mr. Fernandez's request that she do so. Plaintiff was absent from work on August 30 and did not receive the warning. She also was late to work on August 31. Plaintiff does not dispute that she was absent or left early on the days identified in the warning.[3]

Our District has acknowledged that "[e]xcessive absenteeism may render an employee 'unqualified' for purposes of the required *prima facie* showing." *Mitchell v. Safeway Stores, Inc.*, 624 F. Supp. 932, 935 (D. Kan. 1985) (emphasis in original); *accord Jackson v. Boeing Co.*, No. 90-1448-K, 1992 WL 42913, at *3 (D. Kan. Feb. 10, 1992). The summary judgment facts establish that this is the case here. The undisputed facts in the summary judgment record show that plaintiff knew the terms of her employer's attendance and call-in policy and had received a written warning for repeated violations of it. Still, she accumulated absences and left work

---

[3] In her Response to Defendant's Statement of Uncontroverted Facts (Doc. 34 at 2-4), plaintiff states only that she "was not presented with a second warning." Doc. 34 at 3.

without authorization in August 2012.  These absences were excessive, as defined by defendant's employee handbook, and left plaintiff unqualified to perform her job.  *See id*.  Thus, plaintiff cannot satisfy the second prong of the prima facie test for discriminatory discharge.

Plaintiff also fails to satisfy the third prong of the prima facie test.  She argues that defendant's issuance of two final disciplinary warnings after her discharge gives rise to an inference of discrimination.  But again, the uncontroverted facts show that after submitting her two complaints to Mr. Fernandez on August 29, plaintiff left work without his authorization and did not return until August 31.  Upon her return, Mr. Fernandez terminated her employment.  Nothing establishes that defendant's attendance and call-in policy required it to issue three warnings before discharging an employee.  Instead, the policy provided that excessive "tardiness and/or absenteeism may result in disciplinary action *up to and including termination*."  Doc. 31-12 at 2 (emphasis added).  The summary judgment facts therefore demonstrate that Mr. Fernandez's termination decision complied with the terms of the attendance and call-in policy.  Moreover, even if defendant had issued the final two warnings before plaintiff's termination, she was not present at work on those days to receive them.  Plaintiff's unauthorized absence on August 29, her absence on August 30, and her absence for a portion of August 31 eliminates any possibility that a rational jury could draw a reasonable inference of discrimination from the circumstances of plaintiff's termination.

Next, plaintiff argues that Ms. King's comments that Hispanic employees should learn to speak English are circumstantial evidence of defendant's discriminatory animus toward her.  But this argument significantly reworks Ms. King's comments.  Plaintiff conceded that Ms. King's comments referenced employees who spoke only Spanish.  But plaintiff spoke both English and Spanish fluently.  She also testified that she used English in conversation with Ms. King.  *See*

13

Doc. 34-2 at 48.  Plaintiff does not explain how Ms. King's comments possibly could convey an animus directed at her—a bilingual employee.  Nor does plaintiff provide a reason for a rational jury to conclude that the comments by Ms. King (not a person who made any decisions about plaintiff's employment) may have affected Mr. Fernandez's decision to terminate plaintiff's employment.  Because plaintiff has failed to connect Ms. King's comments to defendant's termination decision, they are insufficient to establish an inference of discrimination.  *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (affirming summary judgment because "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.  [Plaintiff] must demonstrate a nexus exists between these allegedly discriminatory statements and the [defendant's] decision to terminate her.") (citations omitted); *Figures v. Bd. of Pub. Utils.*, 967 F.2d 357, 360-61 (10th Cir. 1992) (holding summary judgment in Title VII discrimination action was proper, as "evidence of racial comments . . . was not probative of any issue . . . unless [plaintiff] could link those comments to personnel actions of hiring, firing, or promoting."); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993) (finding supervisor's comments that Korean-American employees should "learn to speak English" were insufficient to show discrimination or to overturn trial court's grant of summary judgment against Title VII action).

The summary judgment facts fail to satisfy the second and third prongs of a prima facie case of discriminatory discharge.  The Court therefore grants defendant's motion for summary judgment against this claim.

### 3. Retaliation

For her third claim, plaintiff argues that defendant and Ms. King retaliated against her in two ways.  First, she contends that defendant terminated her employment in retaliation for her

14

complaints about Ms. King.  Second, plaintiff asserts that Ms. King retaliated against her by raising her voice and continuing to insist that she not speak Spanish while at work.

To establish a prima facie case of retaliation, plaintiff must prove that:  (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006)).  An employment action is "materially adverse" if it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

For purposes of summary judgment, defendant concedes that plaintiff has established a prima facie case of retaliatory termination against defendant.  And it does not dispute plaintiff's claim that Ms. King's post-complaint conduct satisfies the first and third prongs of the prima facie test.  But defendant argues that plaintiff cannot demonstrate that a reasonable employee would have found Ms. King's conduct "materially adverse," as *Burlington* defined that term.  Specifically, defendant contends that:  "Ms. King raising her voice at Plaintiff, informing Plaintiff she knew about the complaints, and asking Plaintiff not to speak Spanish are not actions that would deter a reasonable employee from making complaints or filing a claim with the EEOC."  Doc. 31 at 13.

Viewing the summary judgment record in the light most favorable to plaintiff, the Court concludes that she has made the *de minimis* showing required for a prima facie case of retaliation by defendant and Ms. King.  As conceded by defendant, plaintiff engaged in protected opposition by complaining to Mr. Fernandez about Ms. King's conduct.  The parties also agree

15

that her termination was a materially adverse event.  And because of the short time between her complaints on August 29 and her termination on August 31, plaintiff has provided a factual basis for drawing a causal connection between the two events.  *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) ("For purposes of establishing a prima facie case of retaliation, a plaintiff can establish a causal connection by temporal proximity between the protected activity and adverse action.").  Finally, plaintiff's testimony about Ms. King's post-complaint conduct raises at least an inference that a reasonable employee could find her actions materially adverse.  Thus, the burden shifted to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination.

### B.  Defendant's Legitimate, Non-Discriminatory Reason for Discharge

Because plaintiff has established a prima facie case of retaliation, the burden of proof under the *McDonnell Douglas* framework shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citation omitted).  Defendant has done so.  It contends that it terminated plaintiff because of her excessive absenteeism in violation of the attendance and call-in policy.  This is a legitimate, non-discriminatory reason for plaintiff's termination and, as explained above, is well-supported by the summary judgment record.  The burden therefore shifts back to plaintiff to show that defendant's non-discriminatory explanation is pretextual.  *Id.* (citation omitted).

### C.  Pretext

Plaintiff may demonstrate pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy

of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and internal quotation marks omitted). To survive summary judgment, plaintiff must raise a genuine issue of material fact about whether the defendant's proffered reason is unworthy of belief. *Id*. at 1322 (citing *Randle*, 69 F.3d at 451). But "'mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for [denying] summary judgment.'" *Id.* at 1323 (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

      Plaintiff advances just one argument against defendant's proffered reason. She contends that its reason is a pretextual one for discrimination because defendant created her final two disciplinary warnings after her termination. Essentially, plaintiff argues that a reasonable jury could conclude that defendant terminated her because of her Mexican ancestry or her complaints about Ms. King and then fabricated her disciplinary documents to cover up its discriminatory motive. But as discussed above, plaintiff's argument ignores the uncontroverted facts of her termination. Most notably: (1) on August 29, the same day that she complained about Ms. King's conduct, plaintiff left work without authorization; (2) Mr. Fernandez requested that she return that afternoon, but she did not; and (3) plaintiff was then absent on August 30, and arrived at work late on August 31.

      Given her documented history of absenteeism, plaintiff's post-complaint absences remove any inference of pretext from defendant's proffered reason. Plaintiff had received a warning for excessive absences in April 2012. Still, she left early or failed to work her scheduled shift eight times in August. Plaintiff's absences were excessive, as defined by defendant's attendance and call-in policy. And defendant's decision to terminate plaintiff's employment complied with the terms of that policy: "Excessive tardiness and/or absenteeism

may result in disciplinary action *up to and including termination*." Doc. 31-12 at 2 (emphasis added). The terms of the policy did not require defendant to issue three disciplinary warnings before dismissing an employee. And plaintiff does not argue that it did. Instead, she speculates only about what a reasonable jury might determine based on the date defendant signed her final warnings. Plaintiff offers no evidence or legal analysis, other than her speculation about defendant's motives, why preparing the documents after her termination casts doubt on defendant's proffered reason. Without more, this speculation is insufficient to raise a genuine issue of material fact or for plaintiff's retaliation claim to survive summary judgment. *See Morgan*, 18 F.3d at 1323.

### IV. Conclusion

Defendant has demonstrated that no genuine issues of material fact exist and it is entitled to judgment as a matter of law against plaintiff's claims of disparate treatment, discriminatory discharge, and retaliation under Title VII, 42 U.S.C. § 1981, and the KAAD. The Court thus grants summary judgment for defendant on each of these claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 30) is granted.

**IT IS SO ORDERED.**

**Dated this 17th day of July, 2015, at Topeka, Kansas.**

s/ **Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**